















RYC    3/20/03    9:10

3:02-CR-02912    USA V. SHAH

*22*

*CRMEMSUP.*

**ANDREW K. NIETOR**
California Bar. No. 208784
**MARISA L. DERSEY**
California Bar No. 207724
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467

Attorneys for Defendant Syed Mustajab Shah

FILED

MAR 18 2003

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE M. JAMES LORENZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 02cr2912-L |
| Plaintiff, | Date: April 1, 2003 |
| v. | Time: 2:00 p.m. |
| SYED MUSTAJAB SHAH (1) MUHAMMED ABID AFRIDI (2) ILYAS ALI (3), | STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT |
| Defendants. | OF DEFENDANT'S MOTIONS |

I.

**MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

This request for discovery is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies" under United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989):

(1) Mr. Shah's Statements. Pursuant to the Fifth and Sixth Amendments, Fed. R. Crim. P. 16(a)(1)(A), and Brady v. Maryland, 373 U.S. 83 (1963), Mr. Shah requests disclosure of all copies of any oral, written or recorded statements made by him, which the government has in its possession, custody, or control, or which by the exercise of due diligence, regardless of to whom made, may become known to the government. This request includes any record containing the substance of any statements made by Mr. Shah in response to interrogation by a known government agent; and the substance of any statements made by

1                                                                02cr2912-L

Mr. Shah, which the government intends to use, for any purpose at trial. See Fed. R. Crim. P. 16(a)(1)(A).

Mr. Shah specifically requests that the arrest report, all reports relating to the circumstances of his arrest and any statements made by Mr. Shah whether before or after his arrest in response to interrogation be turned over to him, if such reports have not already been produced in their entirety. Mr. Shah's request further includes, but is not limited to, any summaries of his oral statements contained in the handwritten notes, the "rough notes," the records, the recordings (audio or visual) reports, the transcripts or other documents of any government agent; any response to any Miranda warnings, which may have been given to Mr. Shah (See United States v. McElroy, 697 F.2d 459 (2nd Cir. 1982)), as well as any other discoverable statements made by Mr. Shah. Fed. R. Crim. P. 16(a)(1)(A).

Finally, regardless of whether the government intends to introduce these statements at trial, the Advisory Committee Notes and the 1991 amendments to Rule 16 mandate that upon the defendant's request the Government must disclose all the defendant's statements, whether oral or written. Accordingly, Mr. Shah moves that the requested statements be produced immediately. He also asks that the Court prohibit the use at trial of any such statements that are not produced pursuant to this request. See Fed R. Crim. P. 16(d)(2) (the court may "prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.")

(2) Mr. Shah's Prior Record. Mr. Shah requests disclosure of his prior record. See Fed R. Crim. P. 16(a)(1)(B). This includes his prior record for any foreign convictions. Additionally, Mr. Shah asks that the Court prohibit assessing any points for offenses not included in the government's response to this request when calculating his criminal history category, should this case proceed to sentencing.

(3) Arrest Reports, Notes and Dispatch Tapes. Mr. Shah also specifically requests the government to turn over all arrest reports, notes, dispatch or any other tapes that relate to the circumstances surrounding his arrest or any questioning. This request includes, but it is not limited to, any rough notes, photographs, records, reports, transcripts or other discoverable material. Fed. R. Crim. P. 16 (a)(1)(A); Brady v. Maryland, 373 U.S. 83 (1983). The government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant. Fed. R. Crim. P. 16 (a)(1)(B) and (C); Fed. R. Crim. P. 26.2 and 12(i).

(4) Statements Relevant to the Defense. Mr. Shah requests disclosure of any statement

02cr2912-L

"relevant to any possible defense or contention" that he might assert. United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982).

(5) Documents and Tangible Objects. Mr. Shah requests pursuant to Fed. R. Crim. P. 16(a)(1)(C), the opportunity to inspect, copy, and photograph, as well as test, if necessary, all documents and tangible objects, including photographs, books, papers, documents, alleged narcotics, fingerprint analyses, or copies of portions thereof, which are material to the defense, or intended for use in the government's case-in-chief, or were obtained from or belong to Mr. Shah. This request specifically applies to all photographs in the government's possession of the alleged narcotics, the alleged stinger missiles, and the form containing the Miranda warnings allegedly read to him.

(6) Reports of Scientific Tests or Examinations. Mr. Shah requests the reports of all tests and examinations which are material to the preparation of the defense or are intended for use by the government at trial. See Fed. R. Crim. P. 16(a)(1)(D). Mr. Shah specifically requests any fingerprint reports and any scientifically conducted laboratory tests of the narcotics.

(7) Expert Witnesses. Mr. Shah requests the name and qualifications of any person that the government intends to call as an expert witness. See Fed. R. Crim. P. 16(a)(1)(E). In addition, Mr. Shah requests written summaries describing the bases and reasons for the expert's opinions. See id. This request includes, but is not limited to, all expert testimony regarding (1) the chemical composition of any substances seized in this case, (2) fingerprint testimony, (3) drug courier profiles and (4) weapons experts. We request that the Court order the government to notify the defense as such in a timely manner, so that a proper 104 (Kumho-Daubert) admissibility hearing can be conducted without unduly delaying the trial.

(8) Brady Material. Mr. Shah requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt, punishment, and/or which affect the credibility of the government's case. See Brady v. Maryland, 373 U.S. 83 (1963). Mr. Shah also notes that many of the items previously requested pursuant to Rule 16(a)(1)(C) may also constitute Brady material.

In addition, impeachment evidence falls within the definition of evidence favorable to the accused, and therefore Mr. Shah requests disclosure of any impeachment evidence concerning any of the government's potential witnesses, including prior convictions and other evidence of criminal conduct. See United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976). In addition,

02cr2912-L

Mr. Shah requests any evidence tending to show that a prospective government witness: (i) is biased or prejudiced against the defendant; (ii) has a motive to falsify or distort his or her testimony; (iii) is unable to perceive, remember, communicate, or tell the truth; or (iv) has used narcotics or other controlled substances, or has been an alcoholic.

In addition, Mr. Shah requests that the Assistant United States Attorney assigned to this case review the personnel files for each agent involved in the present case for impeachment material. Kyles v. Whitley, 115 S. Ct. 1555 (1995); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991); United States v. Lacy, 896 F. Supp. 982 (N.D. Ca. 1995). Mr. Shah requests that the government examine the personnel files and any other files within its care, control or custody, or which could be obtained by the government, for all testifying witnesses, including testifying officers. Mr. Shah requests that these files be reviewed by the government attorney for evidence of perjurious conduct or other like dishonesty, or any other impeachment or exculpatory material, pursuant to its duty under Henthorn. The government's obligation to examine all files arises by virtue of the defense making a demand for their review: the Ninth Circuit in Henthorn remanded the case for in camera review of the agents' files because the government failed to examine the files of agents testifying at trial. This court should, therefore, order the government to review all such files for all testifying witnesses and disclose any impeachment or exculpatory material.

(9) Any Information That May Result in a Lower Sentence Under the Guidelines. As discussed above, this information is discoverable under Brady. This request includes any cooperation or attempted cooperation by Mr. Shah, as well as any information that could affect any base offense level or specific offense characteristics identified in Chapter Two of the United States Sentencing Guidelines. Mr. Shah also requests any information relevant to a Chapter Three adjustment, a determination of Mr. Shah's criminal history, and any information relevant to any other application of the Guidelines.

(10) Request for Preservation of Evidence. Mr. Shah specifically requests that all tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relate to his arrest or the events leading to his arrest be preserved. This request includes, but is not limited to, any samples of narcotics used to conduct any scientific tests, any narcotics, the results of any fingerprint analysis, his personal effects, and any evidence seized from him on. Mr. Shah requests that the Court order the government to question all of the agencies and individuals

02cr2912-L

involved in the prosecution and investigation of his case, to determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

(11) Any Proposed 404(b) Evidence. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In addition, "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Rule 404(b). Fed. R. Evid. 404(b). Mr. Shah requests such notice three weeks before trial in order to allow for adequate trial preparation.

(12) Witness Addresses. Mr. Shah's counsel requests access to the government's witnesses. Thus, counsel requests a witness list and contact phone numbers for each prospective government witness. Counsel also requests the names and contact numbers for witnesses to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as government witnesses.

(13) Jencks Act Material. Mr. Shah requests production in advance of trial of all material discoverable pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid needless delays at pretrial hearings and at trial. This request includes any "rough" notes taken by the agents in this case; these notes must be produced pursuant to 18 U.S.C. § 3500(e)(1). This request also includes production of transcripts of the testimony of any witness before the grand jury. See 18 U.S.C. § 3500(e)(3).

(14) Giglio Information. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), Mr. Shah requests the disclosure of all statements and/or promises, express or implied, made to any government witnesses, in exchange for his/her testimony in this case, and all other information, which could arguably be used for the impeachment of any government witnesses. This request includes, but is not limited to any, express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or of any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about, or advice, concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

(15) Informants and Cooperating Witnesses. Mr. Shah requests disclosure of the name(s), address(es), and location(s) of all informants or cooperating witnesses used or to be used in this case, and

5

02cr2912-L

in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Shah. Roviaro v. United States, 353 U.S. 52, 61-62 (1957). The government must disclose any information derived from informants which exculpates or tends to exculpate Mr. Shah. Brady v. Maryland, 373 U.S. 83 (1963). The government must disclose any information indicating bias on the part of any informant or cooperating witness. Id.

(16) Personnel Record of Government Officers Involved in the Arrest. Mr. Shah requests all citizen complaints and other related internal affairs documents involving any of the law enforcement officers who were involved in the investigation, arrest and interrogation of him, pursuant to Pitchess v. Superior Court, 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these documents, defense counsel will not be able to procure them from any other source.

(17) Residual Request. Mr. Shah intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States.

## II.

### FEDERAL CONSTITUTIONAL PRINCIPLES OF DUE PROCESS AND EFFECTIVE REPRESENTATION BY COUNSEL MANDATE PRODUCTION OF THE WIRE INTERCEPT LINE-SHEETS AND THE WORK-PRODUCT RULE DOES NOT PRECLUDE OR PROTECT SUCH PRODUCTION

A.    Constitutional Provisions As Well As Provisions Concerning The Work-Product Doctrine Compel Production Of The Wire Intercept Line-Sheets.

Mr. Shah needs the line-sheets related to his case in order to mount an effective defense under the fifth and sixth amendments to the Constitution. Mr. Shah anticipates that the government's primary argument in defense of its position not to produce the video or wire intercept line-sheets is that the line-sheets constitute work-product and are therefore not discoverable. The government's position is untenable for four reasons: (1) the line sheets are not work-product; (2) even if this Court finds the line sheets are work-product, substantial need for these documents exists; (3) the government's production of the line-sheets to select counsel who signed the stipulation constitutes a waiver of the privilege claim; and (4) Fed. R. Crim. P. 16(a)(1)(A) requires production.

//

02cr2912-L

1. <u>The line-sheets are not work-product and are therefore not privileged.</u>

In <u>Hickman v. Taylor</u>, 329 U.S. 495, 510-511 (1947), the United States Supreme Court held that the work-product doctrine provided an attorney with a zone of privacy where he or she could work "free from unnecessary intrusion by opposing parties and their counsel." The logic behind the work-product doctrine is that opposing counsel should not enjoy free access to an attorney's thought processes. <u>Id.</u> at 511; <u>In the Matter of Grand Jury Subpoenas</u>, 959 F.2d 1158, 1166-1167 (2d Cir. 1992). The work-product doctrine serves to balance an attorney's ability to prepare in the course of representing a client against society's interest in revealing all true and material facts relevant to the disposition of a dispute. <u>Hickman v. Taylor</u>, 329 U.S. at 509-512; <u>In re Subpoena Duces Tecum</u>, 738 F.2d 1367, 1371 (D.C. Cir. 1984). Unlike the attorney-client privilege, the work-product doctrine is a procedural immunity and not an evidentiary privilege. <u>Connolly Data Systems v. Victor Technologies</u>, 114 F.R.D. 89, 95 n.4 (S.D. Cal. 1987).

Thought processes of an attorney include preparing legal theories, planning litigation strategies and trial tactics, and sifting through information. <u>Hickman v. Taylor</u>, <u>supra</u>, 329 U.S. at 511. "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." <u>United States v. Nobles</u>, 422 U.S. 225, 238 (1975). "The doctrine grants counsel an opportunity to think or prepare a client's case without fear of intrusion by an adversary." <u>In re Six Grand Jury Witnesses</u>, 979 F.2d 939 944 (2d Cir. 1992).

None of the above protections afforded to work-product are applicable to the line-sheets prepared by government monitors in this case. As set forth above, the monitors prepared the wire intercept line-sheets at the time of the wire intercepts. The wire intercept line-sheets do not reflect an attorney's thought processes, but merely record certain information about the wire communication the monitor overheard. Thus, the wire intercept line-sheets are not work-product and any claim of privilege as to these documents has no merit.

2. <u>Even if this Court finds that the line-sheets are work-product, the substantial need for these documents compels production of them.</u>

The work-product privilege is not absolute. A party seeking disclosure of material that is protected by the work-product doctrine must show "substantial need" for work-product. <u>In re Grand Jury</u>

7

Proceedings, 219 F.3d 175, 190 (2d Cir. 2000). The "substantial need" aspect of the work-product doctrine is embodied in Rule 26(b)(3) of the Federal Rules of Civil Procedure:

> a party may obtain discovery of documents ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation. Fed. R. Civ. P. 26(b)(3).

The process of preparing the line-sheets demonstrates that they in no way reflect "mental impressions, conclusions, opinions, or legal theories of an attorney." To the extent, however, that the documents sought may show "mental impressions, conclusions, opinions, or legal theories of an attorney," courts have held that, "at a minimum such material is to be protected unless a highly persuasive showing [of need] is made." United States v. Adlman, 134 F.3d 1194 1204 (2d Cir. 1998); see also Upjohn v. United States, 449 U.S. 383, 401-402 (1981); Connolly Data Systems v. Victor Technologies, supra, 114 F.R.D. 89; In re Doe, 662 F.2d 1073 (4th Cir. 1981); In re Murphy, 560 F.2d 326, 336 (8th Cir. 1977); In re Martin Marietta Corp., 856 F.2d 619, 626 (1989); U.S. ex rel Burroughs v. DeNardi Corp., 167 F.R.D. 680, 684 (S.D. Cal. 1996); Durkin v. Shields, 167 F.R.D. 447, 453 (S.D. Cal. 1995).

In this case, there exists a highly persuasive showing of substantial need for production of the line-sheets. The import of the line-sheets is enormous in at least the following two ways. First, other than having an interpreter listen to and translate the numerous wire intercepts, the line-sheets are the only means by which defense counsel may locate those calls pertaining to their clients. This would obviously have an impact not only on the costs associated with trial preparation, but on counsels's ability to assess the case in a timely manner. The time to translate each call represents an enormous cost. Such an expenditure, when this work has already been done by the government and exists in the line-sheets, is needless.

The second basis which shows substantial need for the line-sheets concerns the right to attack the validity and constitutionality of the wire intercept orders. Mr. Shah anticipates that there were no transcripts of any calls prepared at the time of the affidavits in support of the intercept orders, and information contained in the affidavits in support of the wire intercept orders stems from information

02cr2912-L

contained in the line-sheets. To the degree there are irregularities and/or errors in information contained in the line- sheets and relied upon by government agents in their sworn affidavits in support of the wire intercept application, such irregularities and/or errors could form the basis for motions attacking the wire intercept orders.

    3. Even if this Court finds the line-sheets are work-product, the government will waive any claim of privilege by entering a stipulation to produce them.

Courts have applied the waiver doctrine to claims of work-product privilege. The waiver doctrine provides that voluntary disclosure of work-product to an adversary waives the privilege as to other parties. United States v. Nobles, supra, 422 U.S. at 239; In re John Doe Corp., 675 F.2d 482, 489 (2d Cir. 1982). One of the most important functions of the work-product doctrine is to prevent adversaries from gaining access to the fruits of investigative and analytical efforts and strategies. Analysis, therefore, of whether there has been a waiver of the doctrine must focus on whether the disclosures increased the likelihood that an opponent would gain access to the documents at issue. Bank of the West v. Valley National Bank, 132 F.R.D. 250, 262 (N.D. Cal. 1990); In re Subpoenas Duces Tecum, supra, 738 F.2d at 1374-1375 (D.C. Cir. 1984).

In the event this Court finds that the line-sheets are work-product, the disclosure by the government to counsel willing to sign the stipulation will waive any claim of privilege. "Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears." In re Steinhardt Partners, 9 F.3d 230, 235 (2d Cir. 1993).

The government's stipulation requires that defense counsel waive any attack on the validity and constitutionality of the wire intercept orders before it will produce the line-sheets. Such an advantage -- namely freeing itself from the possibility of unconstitutional or otherwise invalid orders -- directly flows to the government upon signing of the stipulation. In In re John Doe Corp., 675 F.2d 482, 489 (2d Cir. 1982), the Second Circuit denied a claim of privilege after a claimant decided to selectively disclose confidential materials in order to achieve other beneficial purposes. Other circuit courts agree: "[t]he client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." Permian Corp. v. United States,

665 F.2d 1214, 1221 (D.C. Cir. 1981).[1]

Work-product is work-product and its character as such should not be found to change in chameleon-like fashion depending on the willingness of an adverse party to abide by terms and conditions set by an opponent as conditions precedent for disclosure. The government has waived any claim of privilege by releasing the line sheets to select defense counsel.

4. <u>The government must produce the line-sheets because Fed. R. Crim. P. 16(a)(1)(A) requires production of all statements by an accused.</u>

The government must produce "any relevant written or recorded statements" made by an accused in a criminal case. Fed. R. Crim. P. 16(a)(1)(A). Based upon the government's description of them, the line-sheets contain statements of the accused and therefore the government must produce them.

Furthermore, the government regularly concedes the production of statements by the accused in various documents generated by investigating agents such as Reports Of Investigation (United States Customs Service, Drug Enforcement Administration), and Records Of Deportable/Inadmissible Alien (Immigration And Naturalization Service forms I-213 and I-831). The line-sheets in this case are indistinguishable from the reports the government regularly produces. Thus, the Court should order production of the line sheets.

## III.

## MOTIONS TO COMPEL IMMEDIATE NOTIFICATION OF ATTORNEY-CLIENT MONITORING AND FIND 28 C.F.R. § 501.3 UNCONSTITUTIONAL

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications . . . The privilege is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." <u>Swidler & Berlin n. United States</u>, 524 U.S. 399, 403 (1998) (internal citations omitted). Implementation of attorney-client monitoring procedures authorized under 28 C.F.R. § 501.3 violates Mr. Shah's Sixth Amendment right to assistance of counsel and the attorney-client privilege.

_____

[1] Although the <u>Permian</u> holding was limited to a discussion of the attorney-client privilege, that Circuit and the Second and Third Circuits have applied similar reasoning to work-product. <u>In re Sealed Case</u>, 676 F.2d 793 (D.C. Cir. 1982); <u>Westinghouse Electric Corp. v. Republic of the Philippines</u>, 951 F.2d 1414 (3d Cir. 1991); <u>In re Steinhardt Partners</u>, <u>supra</u>, 9 F.3d at 235.

02cr2912-L

A.          The government must provide immediate notification of any monitoring of attorney-client communications.

At the detention hearing on March 12, 2003, counsel for the defendants expressed concern over the possibility that their communications with their clients were being monitored. This issue was raised because of unusual delay and personnel activity at the Metropolitan Correctional Center when attorney visits were conducted with these defendants, the nature of the charges, and the extremely broad authorization recently claimed by the Attorney General to authorize the Bureau of Prisons to engage in such monitoring. See 28 C.F.R. § 501.3. When asked by the court to respond, the Assistant U.S. Attorney neither confirmed nor denied that such monitoring was taking place. When defense counsel asked that the court inquire further of the prosecutor, the Magistrate Judge suggested that the matter be taken up by this Court.

Mr. Shah requests immediate notification as to whether any attorney-client communications have been or are being monitored, as required under 28 C.F.R. § 501.3(d)(2). Such notification is to come from the Director, Bureau of Prisons.

Mr. Shah further requests assurances that the government will provide him and his counsel with prior notification if the Attorney General were to direct any such monitoring pursuant to these regulations in the future. See United States v. Sattar, No. 02cr395(JGK), 2002 WL 1836755 (S.D.N.Y. Aug. 12, 2002).

B.          28 C.F.R. § 501.3 Is Unconstitutional.

The regulation gives the Attorney General unreviewable discretion to deny a person in federal custody the right to communicate confidentially with an attorney. Where the Attorney General believes that there is "reasonable suspicion" that a person in custody "may" use communications with attorneys or their agents "to further or facilitate acts of terrorism," the Department of Justice "shall . . . provide appropriate procedures for the monitoring or review of communications between that inmate and attorneys or attorneys' agents who are traditionally covered by the attorney-client privilege." 28 C.F.R. § 501.3(d).

The regulation instructs that the Bureau of Prisons "shall provide written notice to the inmate and to the attorneys involved, prior to the initiation of any monitoring or review." Furthermore, the regulation calls for the establishment of a "privilege team" to review the communications and determine what communications are, indeed, privileged and what communications may be disclosed.

02cr2912-L

This regulation is unconstitutional on several grounds.

**(i) Vague:**

Monitoring of attorney-client communications under 28 C.F.R. § 501.3 provides for an exception to the written notification requirement; specifically, "prior court authorization." However, there is no further indication of the nature of the court authorization. Whether such court order is meant to provide notification to the defendant as an alternative to written notification of the Bureau of Prisons or possibly as an exception to any notification of defendants is unclear. That portion of the Code, therefore, is unconstitutionally vague and unjustifiably deprives Mr. Shah of his Sixth Amendment right to effective counsel.

The regulation is vague in other respects. The regulation allows monitoring of attorney-client communications when the Attorney General believes there is "reasonable suspicion" that a person "may" use the communications with attorneys "to further or facilitate acts of terrorism." There is no provision for judicial review, no definition of "reasonable suspicion" or "acts of terrorism" and no provision as to whether there must be a finding that the defense attorney would actually or likely cooperate with the inmate to further any such acts. The regulation, which calls for a "privilege team" to review and safeguard any privileged material, does not provide guidelines for the qualifications or selection of its members except a general bar against anyone "involved in the underlying investigation."

The regulation, which allows an Attorney General to unilaterally determine when to eavesdrop on an attorney and his client with no judicial review, is unconstitutionally vague.

**(ii) Fourth Amendment:**

The regulation violates the Fourth Amendment by depriving an inmate of one of the strongest expectations of privacy known in our society: the confidentiality of attorney-client communications. The expectation of privacy of a convicted person may, indeed, be diminished in some respects by incarceration. However, the regulation covers all inmates, with no distinction between those convicted and those waiting for trial. The regulation unconstitutionally violates the Fourth Amendment rights of inmates, including and especially Mr. Shah, who should enjoy the presumption of innocence at this stage of the proceeding. The regulation provides no guidelines for "a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell v. Wolfish, 441 U.S. 520, 559 (1979). Given the bedrock

02cr2912-L

privacy issue at stake, the attorney-client communication, the Fourth Amendment does not allow such a unilateral decision, through a mere regulation, to be exercised by the Attorney General.

### (iii) Sixth Amendment:

This regulation also violates the Sixth Amendment right to assistance of counsel. "[T]he Sixth Amendment's assistance-of-counsel guarantee can be meaningfully implemented only if a criminal defendant knows that his communications with his attorney are private and that his lawful preparations for trial are secure against intrusion by the government, his adversary in the criminal proceedings." Weatherford v. Bursey, 429 U.S. 545, 554 n.4 (1997). The monitoring of attorney-client communications detailed in 28 C.F.R. § 501.3 unconstitutionally deprives Mr. Shah of assistance of counsel by perpetually threatening him with government eavesdropping with no prior notification. Mr. Shah is suffering an ongoing violation of his Sixth Amendment right to counsel by virtue of the never-ending possibility of secret electronic monitoring of his communications with his attorney, as permitted under the regulation. Mr. Shah was informed of the possibility that the government would be monitoring his meetings and other communications with his attorney with no prior notification. As a result, Mr. Shah does not feel that he can effectively communicate with his counsel due to the fear that the government might intercept privileged communications and use them against him in these proceedings. Because this administrative regulation effectively deprives Mr. Shah of his Sixth Amendment right to counsel, this Court should find that 28 C.F.R. § 501.3 is unconstitutional.

### (iv) Constitutional right of access to the courts:

Apart from a Sixth Amendment right, "prisoners have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977). Furthermore, a prisoner's right to receive the assistance of counsel includes the right to communicate confidentially with counsel. See Ching v. Lewis, 895 F.2d 608, 610 (9th Cir. 1990). The regulation, by depriving Mr. Shah meaningful confidential access to an attorney, is unconstitutional.

### (v) Unnecessary regulation:

The regulation is ultimately unnecessary. Federal officials with probable cause to believe that an inmate is using attorney-client communications to further criminal purposes may obtain a warrant under existing law to intercept those communications. Such actions have even been approved by the

13

02cr2912-L

Supreme Court. See Andresen v. Maryland, 427 U.S. 463 (1976). Since existing law already strikes the delicate balance between the rights of defendants to communicate confidentially with their attorneys and the needs of law enforcement, this regulation, which violates several bedrock constitutional protections and privileges, is wholly unnecessary. Such a regulation, which gives incredibly far-reaching and unreviewable authority to the Attorney General, is unconstitutional.

## IV.

## REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

Mr. Shah and defense counsel have received no discovery in this case. As new information comes to light, the defense may find it necessary to file further motions. Therefore, defense counsel requests the opportunity to file further motions based upon information gained from discovery.

## V.

## CONCLUSION

For the reasons stated above, Mr. Shah requests that this Court grant his motions.

Respectfully submitted,

Dated: March 18, 2003:

**ANDREW K. NIETOR**
**MARISA L. DERSEY**
Federal Defenders of San Diego, Inc.
Attorneys for Defendant Shah

H:\AKN\Motions\Shah\Shah.mtn1

14

02cr2912-L